**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

TODD LOPEZ, as Personal Representative
of the ESTATE OF CHRISTOPHER JR. TAVAREZ,

Plaintiff,

vs. Case No. 1:25-cv-01033-KWR-KRS

KODIAK GAS SERVICES, LLC,
KODIAK GAS SERVIES, INC.,
and ASHLEY VALENTINE KENDRICK
as Administratrix of the ESTATE OF
KYLE KENDRICK,

Defendants.

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**THIS MATTER** comes before the Court upon Defendants' Motion for Summary Judgment (Doc. 51). Defendants Kodiak Gas Services, LLC and Kodiak Gas Services, Inc., bring the instant motion (collectively, "Kodiak Defendants" or "Defendants"). Defendant Ashley Valentine Kendrick, as Administratrix of the Estate of Kyle Kendrick, does not join in the Motion. Defendants argue that the New Mexico Workers' Compensation Act ("WCA") designates the exclusive remedy for Plaintiff's suit. *See generally* Mot. Plaintiff argues that the relevant injury occurred outside the purview of employment, and the WCA is inapposite to this suit. *See generally* Pl.'s Resp. Opp'n Mot. Summ. J., Doc. 56. The Court finds that Defendants have not carried their burden on summary judgment.

Having reviewed both parties' briefing, the attached exhibits, and the applicable law, the Court finds Defendants' Motion is not well-taken, and, therefore, is **DENIED**.

## BACKGROUND[1]

This case arises from a fatal car collision between Christopher Tavarez ("Tavarez") and Kyle Kendrick ("Kendrick"). Defendants hired Tavarez as a Field Service Technician and later promoted him to Field Service Technician, Intermediate. Mot., UMF 2. Tavarez's job required him to travel to customers' gas production sites to perform work in the field. *Id.*, UMF 3; Resp., UMF 3.

Defendants facilitate the required travel in two ways: some employees drive company vehicles, and other employees are compensated for using their own vehicles for business purposes. Mot., UMF 5, 6. Tavarez fell into the latter category. *Id.*, UMF 6. His job included a monthly vehicle allowance of $1,450 for business use of his personal vehicle. *Id.*, UMF 7. Additionally, Tavarez was required to maintain automobile liability insurance. *Id.* His offer for employment with Defendants also applied a "Truck Policy," which governs employees' use of personal vehicles

---

[1] Defendants attach a Supplemental Affidavit of Milton Roberts to their Reply. Reply Supp. Mot. Summ. J., Ex. A, Doc. 59. It appears that the Supplemental Affidavit was submitted to controvert Plaintiff's additional material facts, which is permitted under the Local Civil Rules. D.N.M. LR-Civ. 56.1(b). When a movant presents new evidence in a reply brief, the Court may either permit a surreply or refrain from relying on the new material. *Beaird v. Seagate Technology, Inc.*, 145 F.3d 1159, 1164–65 (10th Cir. 1998). Indeed, the Tenth Circuit has stated that

> "when a moving party advances in a reply new reasons and evidence in support of its motion for summary judgment, the nonmoving party should be granted an opportunity to respond. However, if the district court grants summary judgment for the movant without relying on the new materials and arguments in the movant's reply brief, it does not abuse its discretion by precluding a surreply.

*Id.* (internal citations omitted) (cleaned up); *see also Green v. U.S. Anesthesia Partners of Colo., Inc.*, No. 22-1319, 2023 WL 7015660, at *7 (10th Cir. Oct. 25, 2023) (unpublished); *Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1139 n. 13 (10th Cir. 2003). Plaintiff has had no opportunity to respond to the supplemental affidavit.

However, even if the Court were to consider the affidavit, consideration would only create friction between Plaintiff's and Defendants' narrative, which would be construed in favor of Plaintiff, the non-movant. *Barney v. Pulsipher*, 143 F.3d 1299, 1306 (10th Cir. 1998). Thus, consideration of the Reply affidavit would produce no difference in outcome.

for business purposes. *Id.*, UMF 8–9. The Truck Policy includes reimbursement provisions for the use of a personal vehicle. *Id.*, UMF 10. Defendant also issued Tavarez a fuel card. *Id.* Defendants' records reflect Tavarez's fuel card transactions and its reimbursement of his vehicle maintenance expenses. *See Id.*, Ex. G.; *see also Id.*, Ex. H.

Defendants' customer work sites are generally located in remote areas. Mot., Ex. D ¶ 4. Field service technicians must travel between work sites and drive to and leave those sites at the end of their shifts. *Id.* Daniel Jacks ("Jacks"), one of Tavarez's former coworkers, averred that Tavarez was "assigned to a specific service area and was responsible for servicing a consistent rotation of designated units, which never changed during his employment." Resp., Ex. 5 ¶¶ 4, 7. Jacks also stated that field technicians were not paid a per diem or separate mileage, that they were off duty after their final stations and free to go wherever they chose, and that they had no duty to drive anyone else. *Id.* ¶¶ 10–13. The Court accepts these statements as true for purposes of this motion.

Tavarez's last assigned work location before the fatal collision was a work site known as Stateline 8. Mot., Ex. D ¶ 5. Access to and from Stateline 8 is generally on U.S. Highway 285, the route he and other technicians regularly used. Mot., UMF 12. At about 4:24 a.m. on May 11, 2025, Tavarez texted his supervisor with "the status of the equipment and stat[ed] that he was 'headed in.'" Mot. Ex. D ¶ 6. His supervisor understood that to mean that he had finished his assigned work at Stateline 8 and was leaving. *Id.*

Around an hour later, at 5:24 a.m., Tavarez was driving north on Highway 285, and away from Stateline 8. Mot., UMF 11; *Id.*, Ex. I at 1–3. Kendrick, also an employee of Defendants, was driving a company truck south in the northbound lanes—in other words, in the wrong lane of traffic—and collided head-on with Tavarez. Resp., Ex. 1 at 4–7; *id.*, Ex. 3 at 2. Both drivers died.

*Id.*, Ex. 1 at 5. A post-mortem toxicology report showed that Kendrick had a blood alcohol concentration of .333 and that codeine was present in his system. *Id.*, Ex. 2 at 1–3.

Plaintiff brought a wrongful death action, asserting several claims against Defendants Kodiak Gas Services, LLC, Kodiak Gas Services, Inc., and the Estate of Kyle Kendrick, in state court. *See generally* Notice of Removal, Doc. 1. On October 17, 2025, Defendants collectively removed the action to this court. *See generally id.* On June 4, 2026, Defendants filed the instant motion for summary judgment. *See generally* Mot. Plaintiff responded on July 2, 2026, and Defendants filed their reply on July 30, 2026. *See generally* Resp; Reply Supp. Mot. Summ. J., Doc. 59.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). As the Tenth Circuit has explained, "mere assertions and conjecture are not enough to survive summary judgment." *York v. AT&T*, 95 F.3d 948, 995 (10th Cir. 1996). "A fact is material if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented." *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1306 (10th Cir. 2017) (quotation marks and citation omitted).

Where the moving party does not have the ultimate burden of persuasion at trial, it still has the initial burden of production on a motion for summary judgment. Fed. R. Civ. P. 56(c)*; see*

*also Eaves v. Fireman's Fund Ins. Cos.*, 148 Fed. App'x 696, 700 (10th Cir. 2005) (internal citation omitted). The moving party may carry its initial burden of production "by showing that [the nonmoving] party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact." Fed. R. Civ. P. 56(c)(1)(B) (Comm. cmts. 2010). "Th[is] burden on the moving party may be discharged by showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013) (quoting *Celotex*, 477 U.S. at 325). "If the movant carries this initial burden, the non-movant may not rest upon its pleadings, but must set forth specific facts showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998) (citing *Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir. 1996)).

When determining whether the movant has carried its burden, the Court keeps two principles in mind. First, while the Court must draw all reasonable inferences in the light most favorable to the non-moving party, *id.* at 1306, that party's "version of the facts must find support in the record," *Thomson v. Salt Lake County*, 584 F.3d 1304, 1312 (10th Cir. 2009). Second, the Court's role is not to weigh the evidence or decide any issues of credibility, but to assess the threshold issue of whether a genuine issue exists as to material facts requiring a trial. See *Liberty Lobby*, 477 U.S. at 249, 255.

## DISCUSSION

Defendants argue that they are entitled to judgment as a matter of law because Tavarez qualified under the course and scope of work at the time of his fatal car collision with Kendrick, such that the WCA designates the exclusive remedy. *See generally* Mot. On the other hand, Plaintiff rejects the contention that the WCA applies, asserting that Tavarez was not within the

scope of employment, and instead "was a mere commuter whose death did not arise out of and in the course and scope of his employment." Resp. at 3.

**I. The WCA as an exclusive remedy.**

The WCA provides for the exclusive remedy for workplace personal injuries or death when (1) the employer has complied with the Act's insurance provisions, (2) the injury or death occurred from activity arising out of and in the course of his employment, and (3) the injury or death was proximately caused by the accident arising out of and in the course of his employment and was not deliberately self-inflicted.[2] *See* NMSA 1978, § 52-1-9 (1973). "The Act represents the 'result of a bargain struck between employers and employees. In return for the loss of a common law tort claim for accidents arising out of the scope of employment, [the Act] ensures that workers are provided some compensation.'" *Delgado v. Phelps Dodge Chino, Inc.*, 34 P.3d 1148, 1152–53 (N.M. 2001) (quoting *Coates v. Wal–Mart Stores, Inc.,* 976 P.2d 999, 1004 (N.M. 1999) (citation omitted)). "This 'bargain' is based on 'a mutual renunciation of common law rights and defenses by employers and employees alike.'" *Id.* at 1153 (quoting NMSA 1978, § 52–5–1 (1989)).

Indeed, "[t]he WCA only covers work-related accidents and only injuries that fall within the act's coverage." *Coates*, 976 P.2d at 1004. A claim falls outside the WCA for work-related injuries if: 1) the injuries do not arise out of employment; 2) substantial evidence exists that the employer intended to injure the employee; or 3) the injuries are not those compensable under the WCA. *Id.* (internal citations omitted) (cleaned up). Injuries included under the WCA are "accidental injuries to workers and death resulting from accidental injury as a result of their employment and while at work in any place where their employer's business requires their

[2] The parties do not advance arguments relevant to the satisfaction of the Act's insurance or proximate cause requirements, so the Court does not independently investigate these elements of the WCA.

presence," but not included are "injuries to any worker occurring while on his way to assume the duties of his employment or after leaving such duties." *Rodriguez v. Permian Drilling Corp.*, 258 P.3d 443, 447–48 (N.M. 2011).

Defendants argue that the WCA's exclusivity bar applies here because Tavarez's death—the car collision—arose out of and during the course of his employment. *See generally* Mot. Such a finding would demand that the Court find Plaintiff's claims here barred by the WCA. Conversely, Plaintiff contends that the WCA does not apply because the car collision occurred outside the confines of Tavarez's employment, while he was leaving work. *See generally* Resp.

## II. The "going and coming" rule and the "traveling employees" exception.

Personal injury or death that occurs "while on [the] way to assume the duties of . . . employment or after leaving such duties" is categorically excluded from the WCA's exclusivity bar, and "commonly referred to as the 'going and coming' rule." *Rodriguez*, 258 P.3d at 448. "That is, injuries incurred during a commute are not covered under workers' compensation law." *Id.* "This rule arises from the recognition that, while admittedly the employment is the cause of the workman's journey between his home and the factory, it is generally taken for granted that workmen's compensation was not intended to protect him against all the perils of that journey." *Id.* (quoting *Ramirez v. Dawson Prod. Partners, Inc.,* 995 P.2d 1043, 1047 (N.M. Ct. App. 2000)); *see also Barton v. Las Cositas*, 694 P.2d 1377, 1380 (N.M. Ct. App. 1984).[3]

[3] The *Barton* court stated that

> [t]he general rule is that employment begins when the employee reaches his place of work and ends after he leaves his place of work. Ordinarily, an injury that occurs to an employee while he is away from his work place is not compensable as an injury arising out of and in the course of his employment.

694 P.3d at 1380.

While there exist numerous exceptions to the going and coming rule, the exception at issue in this case is the traveling employee exception. Traveling employees are "employees for whom travel is an integral part of their jobs, such as those who travel to different locations to perform their duties, as differentiated from employees who commute daily from home to a single workplace." *Id.* (quoting *Ramirez*, 995 P.2d at 1048). They are "simply [employees] who must travel significant distances to and from [their] job[s], however." *Ramirez*, 995 P.2d at 1048.

> The rationale behind the traveling employee rule is that an employee who is required to travel away from home is furthering the business of his employer as he eats, sleeps, and performs other acts necessary to his health and comfort during his travels. In addition, [w]here the employment requires travel, the employee is consequently exposed to hazards [he or] she would otherwise have the option of avoiding. Thus the hazards of the route become the hazards of the employment.

*Id.* at 1048–49 (internal citations omitted) (cleaned up). Critically,

> [i]t is not merely travel on a highway that creates a risk of compensable injury; if that were so, every ordinary commuter would be covered under the Act. Rather, it is the job's requirement of travel and the employer's authority and control in assigning its employees to different work sites that increase the normal risk and render compensable ... injur[ies] suffered during such travel.

*Id.* at 1049 (quoting *Boyce v. Potter*, 642 A.2d 1342, 1344 (Me. 1994).

Courts have illuminated the distinction between a mere commuter and a traveling employee. "We imagine a commuter as one who chooses to live in Albuquerque or Tesuque but works in Santa Fe. The commuter has the option of living and working in the same city, but for any number of reasons chooses to travel some distance between home and work." *Rodriguez*, 258 P.3d at 448. By contrast, the traveling employee is an employee "whose work not only requires him to travel but for whom travel is an integral part of his employment." *Ramirez*, 995 P.2d at 1050. Nonetheless, "a traveling employee is not covered for every conceivable injury he or she might receive while traveling." *Chavez v. ABF Freight Sys., Inc.*, 27 P.3d 1011, 1014 (N.M. Ct.

App. 2001). "The employee must demonstrate that the injury arose out of and in the course of employment." *Id.* (internal quotation omitted).

> An injury arises out of employment if it is caused by a risk to which the plaintiff [was] subjected by reason of his employment. An injury arises out of employment if the claimant was performing acts the employer instructed the claimant to perform, acts incidental to the claimant's assigned duties, or acts which the claimant had a common law or statutory duty to perform. New Mexico cases have also held that an injury arises out of employment if it is reasonably incident to the employment.

*Id.* (internal citations omitted) (cleaned up).

Ultimately, determining if an employee is a commuter or a traveling employee is a fact bound inquiry, and courts have utilized variable frameworks in making the determination. Courts have outlined a variety of considerations that "are sound guideposts for analyzing whether a worker was a traveling employee at the time of the injury, which, in turn will determine whether an injury arose out of and in the course of employment." *Rodriguez*, 258 P.3d at 449. These include:

> (1) whether the travel occurred during working hours, (2) whether the travel occurred on or off the employer's premises, (3) whether the travel was contemplated by the employment contract, and (4) whether the obligations or conditions of employment created a "zone of special danger" out of which the injury arose. Whether meeting one of the variables is sufficient, by itself, to create a special circumstance warranting recovery depends upon whether the evidence supporting that variable demonstrates a causal connection between the employment and the injury such that the travel to and from work arises out of and in the course of employment.

*Id.* (quoting *Flores*, 192 P.3d at 784).

The New Mexico Supreme Court, in *Rodriguez*, found that two of these factors are particularly significant to New Mexico courts in deciding "whether the traveling employee exception to the going and coming rule applies: the express or implied employment contract terms and the zone of special danger created by the required travel." *Id.* One significant inquiry is whether the activity that gave rise to the injury or death conferred a benefit on the employer. *Id.*

at 448; *Ramirez*, 995 P.2d at 1051. "[T]he activity giving rise to the injury must confer some benefit on the employer." *Rodriguez*, 258 P.3d at 448 (quoting *Ramirez*, 995 P.2d at 1050). "The benefit to the employer need not be pecuniary, and may be as intangible as a well-fed and well-rested employee." *Ramirez*, 995 P.2d at 1051. A survey of New Mexico court cases exhibits that no single factor is dispositive, and courts reach conclusions on employees' status by emphasizing different factors. *See, e.g.*, *Rodriguez*, 258 P.3d at 451 ("While we believe all of the above-stated factors are important considerations . . . , we find the 'zone of special danger' or 'special hazard' factor to be most significant to resolving this case."); *Ramirez*, 995 P.2d at 1051 (finding that an employee's injuries did not arise out of and in the course of his employment because the return trip home during which he incurred the injuries did not confer a benefit on the employer).

## III. <u>Defendants do not demonstrate that Tavarez was a traveling employee as a matter of law</u>.

Defendants do not show, as a matter of law, that Tavarez was a traveling employee when the collision occurred. The Court reaches this conclusion for several reasons, in no particular order: (1) Tavarez's work sites, while not a singular location, were not temporary or constantly changing; (2) Defendants did not pay Tavarez for food or lodging to travel for employment-related travel, or a per diem; (3) mere payment of transportation costs does not bring a commute within the course of employment; (4) Defendants do not articulate an express benefit from Tavarez's relevant drive away from the work site beyond the benefit any employer gains from an employee's commute; (5) Defendants exerted no control over Tavarez at the time of the collision; and (6) Defendants do not show that Tavarez's relevant drive subject him to special danger.

### A. Tavarez's work sites were not temporary or constantly changing.

First, although Tavarez did not work at a singular location, his work sites were fixed to the extent that they were not temporary or constantly shifting. The type of travel that converts a typical

commuter into a traveling employee takes the employee among changing work sites. *See Rodriguez*, 258 P.3d at 452. An unchanging set of units serviced on a consistent circuit is, for purposes of the going and coming rule and the traveling employee exception, more like a single workplace with several offices or buildings than like the moving oil rig in *Rodriguez*.

Defendants describe Tavarez's job as requiring travel between work sites and that Tavarez lacked a fixed work site. Mot., UMF 4. Plaintiff, meanwhile, does not specifically dispute that Tavarez traveled between sites, but resists the characterization of Tavarez as a traveling employee, and asserts that Tavarez's travel between work sites was fixed and never changed during his employment. Resp., UMF 4; *id.* Ex. 5 ¶ 7. At this stage of the proceedings, the Court ignores conclusory labels and construes facts in the light most favorable to the nonmovant. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 674 (10th Cir. 1998) ("[C]onclusory statements do not suffice to create a genuine issue of material fact."); *Barney*, 143 F.3d at 1306. Therefore, the Court accepts that Tavarez traveled between the same work sites throughout his employment with Defendants.

Tavarez used the same route to commute to his service areas, which never changed throughout his employment, serving as strong indicia that Tavarez was not a traveling employee. Resp., Ex. 5 ¶ 8. The *Rodriguez* court discussed an Ohio Supreme Court case, *Ruckman v. Cubby Drilling, Inc.,* 689 N.E.2d 917, 924 (Ohio 1998), before reaching its conclusion. In *Ruckman*, the Ohio court found that workers' compensation applied to rig workers because the travel to the rig sites subjected them to a special hazard as "(1) the rig sites are temporary in nature and constantly changing; (2) workers are unable to 'fix their commute in relation to these remote work sites'; and (3) workers are required to travel vast distances as conditions of their employment." *Rodriguez*, 258 P.3d at 451 (quoting *Ruckman*, 689 N.E.2d at 924). The *Rodriguez* court modeled the rationale of *Ruckman* in determining that the employees "fall squarely within the traveling employees

exception because their travel provided a mutual benefit to the employer and employee and the conditions of employment placed the employees in a zone of special danger out of which the injury arose." *Id.* at 452. The New Mexico Supreme Court explained that oil rig travel presents a special hazard because the rig sites are temporary and changing, so workers cannot fix their commute and must travel vast distances. *Id.* The rig site in *Rodriguez* moved "every seven to eight days, preventing [the employees] from fixing their commute in relation to the rig site." *Id.* Tavarez's circumstances were different. His service area and units did not change, and his route to and from them was the same every shift. Resp., UMF 4; *id.* Ex. 5 ¶ 7. Additionally, whatever travel Tavarez completed among his assigned units during his shift, the trip at issue—when the collision occurred—is not one of those trips. The collision occurred during the drive away from the service area after Tavarez reported that he was "headed in." Mot., Ex. D ¶ 6. That is a trip the going and coming rule governs.

**B. Defendants did not pay Tavarez for food or lodging for employment-related travel.**

Defendants did not pay Tavarez for food or lodging and did not compensate him with a per diem. Resp., Ex. 5 ¶ 10. Defendants do not contend otherwise, and none of their exhibits reflect any such payments or allocations for food or lodging. *See generally* Mot. The *Flores* court, which concluded that the case before it was "not the traveling employee scenario," 192 P.3d at 786, underscored the disparity between its facts and those of *Ramirez*, wherein the court found that workers' compensation applied to two of the three workers, 995 P.2d at 1051. In reaching its own conclusion, the *Flores* court stated that "[i]n *Ramirez,* the rig was ninety miles away from the employees' homes, and the employees lived away from home, with their employer paying for food, lodging, and travel to the work site." *Flores*, 192 P.3d at 787. In *Ramirez*, the employer paid $50

a day for lodging and meals near a work site, plus a daily allowance for travel between the lodging and the oil field. 995 P.2d at 1046.

Nothing comparable is present here. Tavarez's job did not require him to live away from his home, and Defendants did not pay him for food or lodging. Resp., Ex. 5 ¶ 10. Nor did defendants provide Tavarez with a per diem. Resp., Ex. 5 ¶ 10.

**C. Mere payment of some transportation costs does not bring Tavarez's commute within the course of employment.**

Importantly, the mere payment of some transportation costs does not bring Tavarez's commute within the course of employment, as Defendant would have it. Defendants highlight that they paid some of Tavarez's personal vehicle costs. Mot., UMF 5–10; *id.* at 8. Tavarez's position included a $1,450 monthly allowance for the business use of his personal vehicle and required him to carry automobile insurance; the Truck policy reimbursed repairs and tires; and Defendants issued him a fuel card. *Id.*, UMF 7 – 10; *id.* Exs. B, E–H. However, "traveling home from work in the employer's vehicle does not necessarily place an employee within the course of his employment." *Flores*, 192 P.3d at 787. And if use of an employer's own vehicle does not necessarily place an employee within the course of his employment, neither does the partial payment of the costs of the employee's personal vehicle. *See Barrington v. Johnn Drilling Co.*, 181 P.2d 166, 170 (N.M. 1947) ("It is also a general rule that the mere payment of cost of transportation by the employer where an injury sustained during the journey, does not arise out of and in the course of employment. More is required.").

The Court recognizes that *Rodriguez* treated mileage payments and license and insurance requirements as potentially potent indicia that the employee is within the course of his employment, and supporting the application of workers' compensation. *See* 258 P.3d at 452. But the *Rodriguez* court did not say that such payments are alone dispositive. The court relied on these

payments together with a mobile work site, protracted and varied travel, the unique subsidy the employer provided for the drillers to transport a full crew and the substantial benefit that engendered. *Id.* Moreover, the particular nature of the payments in *Rodriguez* differs from the payments at hand here. The driller in *Rodriguez* was paid twenty-five cents per mile to the rig site, such that the payment was expressly fixed to the trip to work itself. *Id.* at 446. Tavarez's allowance, by contrast, functioned as a flat monthly sum for the business use of his vehicle, and it did not vary with the distance between his home and the service area at which he worked. Mot., UMF 7; *id.* Ex. E at 5–6. And unlike the driller in *Rodriguez*, Tavarez had no duty or incentive to transport any other of Defendants' employees.

### D. Defendants do not identify a benefit from Tavarez's relevant drive beyond the benefit any employer receives when an employee commutes.

Defendants fail to articulate a benefit from Tavarez's drive away from the work site beyond the general benefits any employer receives when an employee commutes. Courts have elaborated that the primary inquiry revolves around if the activity that gave rise to the injury or death conferred a benefit on the employer. *Rodriguez*, 258 P.3d at 448. "The benefit to the employer need not be pecuniary, and may be as intangible as a well-fed and well-rested employee." *Ramirez*, 995 P.2d at 1051.

As a preliminary matter, Defendants argue that *Ramirez* does not require proof of "a separate employer benefit at the precise moment of the collision." Reply at 10. The Court agrees that the inquiry does not focus on a single instant. A traveling employee generally remains in the course of employment throughout a trip, absent a distinct personal leave. *Ramirez*, 995 P.2d at 1048–49. However, *Ramirez* also makes clear that the benefit must attach to the trip that gave rise to the injury, not merely to the employment as a whole. Three employees in that case were injured in the same vehicle while they returned home from the same assignment. *Id.* at 1046–47. The

court held that two of the employees were covered by workers' compensation because their trip benefited the employer: the driver was taking a co-worker home to start his scheduled days off and was transporting dirty uniforms for laundering; and the co-worker was returning home to begin those days off, which gave the employer "a well-rested employee." *Id.* at 1051. The third employee, on the other hand, was not covered. Although he too was taking uniforms for cleaning, "it was not necessary for him to accompany [the other two], insofar as they were making the trip and transporting uniforms anyway," and his other reason for going conferred no benefit. *Id.* Defendants' reading, under which any travel connected to a job that requires travel is incidental to the employment, would have covered all three employees. The *Rodriguez* court corroborated that the determination of workers' compensation applicability is trip-specific by outlining one factor that counsels the determination as "whether the travel occurred during working hours." 258 P.3d at 449. In light of this precedent, an employee's status as a traveling employee does not, by itself, bring every trip he takes within the course of his employment. The trip that gave rise to the injury or death must itself be part of the employment.

Defendants do not specifically define a benefit from Tavarez's travel away from the work site beyond benefits from Tavarez's trips broadly. To be sure, Defendants enumerate distinct benefits from Tavarez's travel during the job, but none as to the drive away from the work site. First, Defendants argue that they benefited because Tavarez's travel enabled him to inspect, maintain, and repair compressor units at dispersed customer sites. Mot. at 7–8; Reply at 8, 11. The Court agrees that Tavarez's travel among and between his assigned units during his shift benefited Defendants. But, critically, the collision did not occur during travel between Tavarez's assigned units; it occurred about an hour after Tavarez reported that he was "headed in," on the drive away from his service area. Mot., Ex. D. ¶¶ 6, 8. The drive which occasioned the collision

serviced no unit and no customer. The wide benefit describes Tavarez's work generally, not the specific trip during which the collision occurred.

Second, Defendants argue that they realized financial benefit by avoiding the cost of purchasing, insuring, and maintaining a fleet vehicle for Tavarez. Mot. at 8. This benefit arises broadly from their vehicle arrangement, not from Tavarez's relevant drive away from the work site. Defendants offered technicians, including Tavarez, a choice between a company vehicle and allowances for using a personal vehicle, Mot., UMF 5–6, and the savings Defendants outline accrued regardless of where Tavarez drove after his shift or what he was doing. In *Ramirez*, by contrast, the benefits to the employer were linked to the particular trip during which the injuries occurred: getting a worker home for scheduled days off and transporting uniforms for cleaning, in part at the request of a supervisor. 995 P.2d at 1051. The *Ramirez* court did note that the arrangement incidentally saved the employer the cost of transporting workers in its own vehicles. *Id.* However, that arrangement concerned travel between a far-away assignment and home, made in exchange for regular days off. *Id.* at 1046–47. Defendants' vehicle allowance, by contrast, compensates the business use of a technician's vehicle. Mot., UMF 7; *see generally id.* Ex. E.

Defendants attempt to rely on *Ramirez* for the proposition that a worker remains in the course and scope of employment wherever he chooses to go and whatever he chooses to do after leaving work because a well-rested employee benefits the employer. Reply at 11 ("That Mr. Tavarez was free to choose his ultimate destination after leaving work, . . . is legally immaterial."). However, the benefit in *Ramirez* arose from the structure of the employees' assignment that kept them away from home. The work site in *Ramirez* was about ninety miles from the employees' home, the employees worked around the clock with little time off, the employer paid for lodging and meals so crews would stay near the site, and the employer adopted a rotating schedule of days

off specifically so its workers would be rested and safer. 995 P.2d at 1046–47. One of the two covered employees was returning home to begin one of those scheduled days off. *Id.* at 1051. The *Ramirez* court specifically refused to treat every trip home as beneficial: it denied coverage to an employee whose trip was unnecessary and noted that traveling home too frequently would have undermined the very purpose of rest the employer sought. *Id.* Read as broadly as Defendants urge the Court to, *Ramirez* would cover every employee's drive home after every shift, no matter the distance or assignment structure, because every employer benefits when its employees rest. The going and coming rule would thus have no practical application.

**E. Defendants did not exert control over Tavarez at the time of the fatal collision.**

Tavarez was off duty and free of Defendants' direction when the collision occurred. The *Flores* court weighed the authority or control an employer exerts over an employee at the time of an injury or death as a factor in determining if the injury or death arises in or out of the course of employment. 192 P.3d at 786. In reaching the conclusion that the employees were not in the course of employment, the court stated:

> Here, Employer exerted no authority or control over Appellants either before or after work. Employer imposed no requirement on employees' driving or on other employee conduct away from the drilling rig. Driver's licenses and insurance were not checked or verified by Employer, and no one was assigned to drive anyone else. Each crew member was responsible for his own transportation to and from the rig. Appellants were discharging no duty to or request of Employer. "When work for the day has ended and the employee has left the premises of his employer to go to his home, the liability of the employer ceases[.]"

*Id.* (quoting *Barrington*, 181 P.2d at 171).

Here, Defendants exerted no authority or control over Tavarez at the time of the collision; he was free to do as he pleased. Resp., Ex. 5 ¶¶ 11–13. Much like the case in *Flores*, Tavarez left his assigned work area and he was not "assigned to drive anyone else," he was "responsible for his own transportation," and he was "discharge[ed] no duty to or request of [Defendants]." 192 P.3d

at 786; *see generally* Mot; Resp., Ex. 5 ¶¶ 11–13. On this record, a reasonable fact finder could conclude that Tavarez's work had ended and that he had left the work site on a personal commute.

**F. Defendants do not demonstrate that Tavarez's relevant drive subjected him to special hazards.**

Defendants do not show that Tavarez's relevant drive, during which the collision occurred, placed him in a zone of special hazards. Special hazards are hazards that an employee necessarily confronts as a result of their employment-related journey and would have otherwise had the option to avoid.[4] *Rodriguez*, 258 P.3d at 449. "For an employee to be a traveling employee due to a special hazard of employment, two factors are required: (1) 'but for the employment, the employee would not have been at the location where the injury occurred'; and (2) 'the risk is distinctive in nature or quantitatively greater than risks common to the public.'" *Id.* at 451 (quoting 82 Am. Jur. 2d *Workers' Compensation* § 284 (2003)). In *Rodriguez*, the employees worked long hours and

[4] Defendants overstate the "special hazard" inquiry as "dispositive" to the determination of an employee's status as a traveling employee. Reply at 9. While the existence of a special hazard can strongly marshal support for the determination in favor of a traveling employee, it is probative, not dispositive. The language of *Rodriguez* affirms this reading: "While we believe all of the above-stated factors are important considerations to be undertaken by the WCJ and reviewing courts, we find the 'zone of special danger' or 'special hazard' factor to be most significant to resolving this case." 258 P.3d at 451. And, after outlining the analysis for the special hazard factor, the court stated: "[t]his analysis, along with the requirement that the travel provide some benefit to the employer, *helps determine* whether travel is an integral part of employment, which, in turn, ensures that only those individuals whose injuries arose out of and in the course of employment receive compensation . . . ." *Id.* (emphasis added).

The *Rodriguez* court at most found that the special hazard factor is most significant among the factors, and, more likely, found that the case presented before it signaled the special hazard factor as most important "to resolving [that] case" specifically. The plain text favors the latter reading—the court refers to the special danger inquiry as a factor and states that it "helps determine whether travel is an integral part of employment," not that it "does determine whether travel is an integral part of employment." *Id.* Indeed, the *Rodriguez* court referred to the inquiry as a "factor," for which it is one of many, not as the dispositive inquiry. If the determination of a traveling employee is exclusively adjudged by the special hazard inquiry, there would not exist a factorial test. Defendants' interpretation is a liberal overreading.

had to make long and varied trips to changing rig sites, with no real choice about shortening the commute. *Id.* at 452. Here, Tavarez drove the same route to work to the same coverage area with the same set of units. Resp., Ex. 5 ¶¶ 7–8. And, while Defendants are correct that "[b]ut for his employment, [] Tavarez would not have been traveling on Highway 285 at approximately 5:23 a.m. on the day of the crash," Reply at 7, Defendants fail to show a risk that "is distinctive in nature or quantitatively greater than risks common to the public." *Rodriguez*, 258 P.3d at 451. The collision occurred on U.S. Highway 285, a public highway, when Kendrick, driving in the wrong lane of traffic with a blood alcohol concentration of .333 and codeine in his system, struck Tavarez's vehicle. While the collision occurred in the early morning at the end of an overnight shift, Defendants do not show that the hour or the road made the risk of a wrong-way collision distinctive or materially greater for Tavarez than for any other driver on the same road that morning. Defendants offer no evidence that the shift's length or hours increased Tavarez's risk on the road.

**IV. New Mexico courts have not adopted a "required-vehicle" exception.**

Defendants argue in the alternative that, although New Mexico courts have not expressly adopted the "required-vehicle" "exception by name in the workers' compensation context, its reasoning is fully consistent with—and effectively encompassed by—New Mexico's traveling-employee and employer-benefit jurisprudence." Mot. at 9. This argument is not well-taken. The required-vehicle doctrine has been adopted in some other states but has not yet found footing in New Mexico state courts. As Plaintiff accurately responds, "Defendants ask this Court to expand the scope of the WCA by importing a doctrine developed in other jurisdictions." Resp. at 17.

In some state jurisdictions, under the required-vehicle exception, the going and coming rule does not apply when the employer requires the employee to bring a vehicle to work. *See, e.g.*,

*Hinojosa v. Workmen's Comp. Appeals Bd.*, 501 P.2d 1176, 1182 (Cal. 1972); *Sprinkles v. Associated Indem. Corp.*, 188 Cal. App. 4th 69, 79–80 (2010). Defendants cite no New Mexico authority to show an express adoption; instead, Defendants point to *Lessard v. Coronado Paint & Decorating Ctr.*, Inc., 168 P.3d 155, 163–64 (N.M. Ct. App. 2007), as New Mexico courts' implied endorsement of the exception. *Lessard*, however, does not further Defendants' position. The *Lessard* court references the required-vehicle exception once while surveying cases from other jurisdictions that the appellant advanced. *Id.* at 163–64. The court investigated the exception within the context of a Supreme Court of New Jersey case, and while it observed that the exception "works in the workers' compensation area," it found it inapposite to general tort law liability, which was the domain that *Lessard*'s holding bears upon. *Id.* at 164. *Lessard* was a respondeat superior case, not a workers' compensation case, so it does not resolve the question. *See generally id.* Indeed, *Lessard*'s discussion of the applicability of the required-vehicle exception serves as non-binding dicta; moreover, the decision did not adopt the exception.

Defendants' more comprehensive argument, that the required-vehicle doctrine is fully consistent with workers' compensation law, is similarly unpersuasive. Mot. at 9–10; Reply at 13–14. Defendants correctly state that "[w]hen the federal courts are called upon to interpret state law, the federal court must look to rulings of the highest state court, and, if no such rulings exist, must endeavor to predict how that high court would rule." *Amparan v. Lake Powell Car Rental Cos.*, 882 F.3d 943, 947 (10th Cir. 2018) (quoting *Stickley v. State Farm Mut. Auto. Ins. Co.*, 505 F.3d 1070, 1077 (10th Cir. 2007)).

Precedent and policy suggest that the New Mexico Supreme Court would not adopt a required-vehicle exception. First, a near-analogous analysis is already incorporated as a factor, albeit not dispositive, in the traveling employee analysis. *See Rodriguez*, 258 P.3d at 449 (one

factor in the traveling employee analysis is "whether the travel was contemplated by the employment contract"). Second, the Court finds the required-vehicle exception imprudent on a public policy rationale. Despite Defendants' attempt to characterize the upshot of such an exception otherwise, the required-vehicle exception would render otherwise ordinary commuters traveling employees if their employment contracts stipulate that use of their personal vehicles is required. The required-vehicle exception would make New Mexico courts' frameworks and the statutory requirement of the WCA for determining a traveling employee obsolete with a singular inquiry. Absent more evident intent from New Mexico's courts, this Court is not prepared to extend the required-vehicle doctrine beyond its current jurisdictional limits. Therefore, the required-vehicle exception cannot rescue Defendants' Motion.

## CONCLUSION

The parties largely agree on the facts of the case; however, they disagree about their legal significance. Construing the record and the reasonable inferences from it in Plaintiff's favor, the Court concludes that Defendants have not shown that they are entitled to judgment as a matter of law on their defense that the WCA provides for Plaintiff's exclusive remedy. **IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment (Doc. 51) is hereby **DENIED**.

/S/
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE